CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 15 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAYMON LEWIS ALEXANDER, JR., | ) |
| | ) Civil Action No. 7:13CV00259 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Laymon Lewis Alexander, Jr., was born on June 5, 1965, and eventually completed his high school education. Mr. Alexander has worked as an ammunition assembly laborer, explosive manufacturing supervisor, truck driver, and route sales person. He last worked in 2008. On December 8, 2009, plaintiff filed an application for a period of disability and disability insurance benefits. Mr. Alexander alleged that he became disabled for all forms of substantial

gainful employment on October 17, 2007 due to a heart attack, fatigue, heart problems, and high blood pressure. Plaintiff now maintains that he has remained disabled to the present time. The record reveals that Mr. Alexander met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. §§ 416(i) and 423(a).

Mr. Alexander's claim was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 24, 2012, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mr. Alexander experiences several severe impairments, including coronary artery disease, history of myocardial infarction, and status post coronary artery bypass grafting times four. (TR 19). Because of these conditions, the Law Judge ruled that plaintiff is disabled for his past relevant work roles. However, the Law Judge determined that Mr. Alexander retains sufficient functional capacity to perform a limited range of sedentary exertional activities. The Law Judge assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a). More specifically, he can lift and carry up to 10 pounds occasionally; sit for six hours in an eight-hour work [sic] for two hours at one time; stand for six hours in an eight-hour workday for one hour at one time; walk for two hours in an eight-hour workday for 30 minutes at one time. He can occasionally reach overhead and push/pull with bilateral upper extremities; can frequently reach other than overhead with bilateral upper extremities; can occasionally climb stairs and ramps, climb ladders or scaffolds, balance, stoop, kneel, and crouch; but can never crawl. Furthermore, he can never work around unprotected heights and can only occasionally work around moving mechanical parts, dust, fumes, odors, extreme cold and heat, and vibrations. Lastly, the claimant is limited to simple, routine, repetitive, and unskilled work.

(TR 20). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that Mr. Alexander retains sufficient functional capacity for several specific sedentary work roles existing

2

in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mr. Alexander is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Alexander has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. Mr. Alexander suffered a heart attack in October of 2007. He underwent quadruple coronary artery bypass surgery the next day. Following the surgery, plaintiff initially did well, and he was able to return to work. However, Mr. Alexander began to suffer from increasing symptomatology, including chest pain, shortness of breath, fatigue, weakness, and numbness, especially in his left upper extremity. He now carries a diagnosis of cardiac insufficiency and coronary artery disease. He also suffers from high blood pressure and elevated cholesterol levels.

3

The medical record includes a number of reports and clinical notes from Mr. Alexander's primary treating physician, Dr. Matthew S. Kaatz. Dr. Kaatz considers plaintiff to be totally disabled. For example, on March 6, 2013, Dr. Kaatz reported as follows:

> Mr. Alexander has been a patient of mine for the past 3 ½ years during which time I have treated him for a history of hypertension, hypercholesterolemia, anxiety, depression and coronary disease status post quadruple bypass with refractory angina and pain on a daily basis. I last saw him in the office on March 6th at which point he was taking nitroglycerin every day to help relieve his breakthrough chest pain symptoms. He is now tobacco free and has done everything he can to optimize his health, however, unfortunately is unable to exercise because of his recurrent unstable angina. I believe him to be totally and permanently disabled at this time and I request that you take that into consideration as you contemplate his case.

(TR 480). Dr. Kaatz also submitted a residual functional capacity questionnaire dated February 23, 2012. (TR 450-52). At the time of the administrative hearing, a vocational expert testified that the residual functional findings of Dr. Kaatz are suggestive of total disability for all forms of work activity. (TR 76-79).

The Administrative Law Judge declined to give controlling weight to Dr. Kaatz's reports and opinions, noting that the physician's more recent opinion is inconsistent with other evidence of record, and is not descriptive of plaintiff's current condition. (TR 24). The Law Judge gave more weight to a consultative report generated by Dr. David Boone on March 31, 2012. Following a physical examination, Dr. Boone diagnosed coronary artery disease and high blood pressure. Dr. Boone listed overall findings and functional assessment as follows:

> The number of hours the claimant can stand would be six hours out of an eight-hour workday based on today's exam and what he does on an everyday basis. He [sic] number of hours the claimant could walk would be two hours out of an eight-hour workday, again based on the same. The number of hours the claimant can sit would be six hours out of an eight-hour workday based on the same.

4

> The amount of weight the claimant can be expected to lift and carry would be 10 pounds occasionally and less than 10 pounds frequently.
>
> He does not appear to have any manipulative or postural limitations. He is able to bend over, squat down and pick up a quarter-sized button and paper clip, exchange those from hand to hand and give those back to me. An ODAR form HA115 will be attached.
>
> No visual or communicative limitations. No need for assistive device to ambulate.

(TR 458). Dr. Boone also completed a physical assessment of plaintiff's physical ability for work-related activities. (TR 459-64). When asked to consider residual functional capacity as suggested in Dr. Boone's assessment, the vocational expert identified several specific sedentary work roles in which Mr. Alexander could be expected to perform. (TR 73-76).

While the medical record is in conflict, the court believes that there is substantial evidence to support the Law Judge's decision to credit the findings of Dr. Boone over those of Dr. Kaatz. Stated succinctly, the court agrees that Dr. Kaatz's opinions are not totally consistent with his clinical notes, and that there are no real findings which would support the notion that Mr. Alexander no longer possesses the physical ability to engage in sedentary work activities. Moreover, as properly noted by the Law Judge, the record confirms that Dr. Kaatz had not seen or examined Mr. Alexander for more than one and one-half years prior to completion of the residual functional capacity evaluation on February 23, 2012. Indeed, there is no real indication that Dr. Kaatz has personally treated plaintiff on a regular basis. Given such circumstances, the court believes that the Law Judge reasonably determined that Dr. Boone's report provided a more documented and updated assessment of plaintiff's residual functional capacity.

Mr. Alexander's nonexertional impairments present a somewhat closer question. Dr. Pamela S. Tessnear, a clinical psychologist, completed a comprehensive evaluation on February 20, 2012.

Based on a clinical interview, and interpretation of psychological testing results, Dr. Tessnear diagnosed single episode major depressive disorder of moderate severity; generalized anxiety disorder; panic disorder without agoraphobia; and some post-traumatic stress issues. Dr. Tessnear noted Global Assessment of Functioning of 50.[1] The psychologist assessed plaintiff's residual functional capacity as follows:

> Mr. Alexander is able to understand and follow simple instructions. Concentration is generally adequate until he feels anxious and becomes self-conscious. When he loses his train of thought or makes an error, he stops and goes back to the beginning. He does not require special supervision but he does seek constant feedback because of his fear of making mistakes. He is able to get along with people but his irritability limits his effectiveness with the public. He does poorly in crowds. His ability to deal with stress is reduced and he has difficulty making adjustments to changes.

(TR 475).

Based on Dr. Tessnear's report, the court believes that the Law Judge erred in finding that Mr. Alexander does not experience a severe impairment based on his depression and anxiety.[2] However, the court also believes that the Law Judge adequately accounted for Dr. Tessnear's more important findings in his assessment of plaintiff's residual functional capacity and in his questioning of the vocational expert. As noted above, the Law Judge specifically concluded that Mr. Alexander is limited to simple, routine, repetitive, and unskilled tasks. The Law Judge included these work-related limitations in his hypothetical question to the vocational expert. (TR 71-72). The court is simply unable to conclude that Dr. Tessnear's findings are inconsistent with the Law Judge's assessment. The psychologist noted that Mr. Alexander is able to understand and follow simple

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A GAF score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

[2] Under 20 C.F.R. § 404.1521(a), a severe impairment is characterized as one which significantly limits physical or mental ability for basic work activities.

instructions. (TR 475). She assessed concentration as generally adequate. (TR 475). She determined that plaintiff requires no special supervision and that he is generally able to get along with people. (TR 475). She reported that he is able to engage in activities in which stress is minimized, and which do not require frequent adjustments. (TR 475). Thus, while the court believes that the Law Judge erred in not finding a severe emotional impairment, the court believes that the Law Judge ultimately accounted for the limitations identified by the clinical psychologist.

In considering plaintiff's capacity for alternate work roles, the Law Judge credited the testimony of the vocational expert. Having reviewed all evidence of record, the court believes that the expert's evaluation of the vocational factors, and the assumptions under which the expert deliberated, are both reasonable and consistent with other evidence of record. Thus, the court concludes that there is substantial evidence to support the Law Judge's finding that Mr. Alexander retains sufficient functional capacity to perform several specific sedentary work roles which exist in significant number in the national economy. It follows that the final decision of the Commissioner must be affirmed.

On appeal to this court, plaintiff argues that the Law Judge failed to accord proper weight to the reports and opinions from the treating physician, Dr. Kaatz. It is true that under 20 C.F.R. § 404.1527(c)(2), it is provided that, generally, more weight should be accorded to opinions from treating sources. However, in the instant case, the court believes that there is some basis to challenge the regularity of Dr. Kaatz's treatment. In any event, the court agrees that the medical record does not include clinical findings which would support a determination of disability for all sedentary levels of work. In such circumstances, the court concludes that the Law Judge reasonably declined to give controlling weight to the opinions of Dr. Kaatz. See 20 C.F.R. § 404.1527(c)(3) and (4).

7

In affirming the final decision of the Commissioner, the court does not suggest that Mr. Alexander is free of all weakness, fatigue, discomfort, and depression. Indeed, the medical record confirms that plaintiff suffers from several serious problems which can be expected to result in many subjective complaints, as outlined by Mr. Alexander in his testimony. Moreover, the court believes that Dr. Tessnear's report gives good insight as to the emotional problems associated with plaintiff's medical condition and his inability to engage in a full range of exertion. However, it must be recognized that disability for past work, or the inability to do work activity without some subjective discomfort, do not render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). It appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claims for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

DATED: This 15th day of May, 2014.

Chief United States District Judge